Walter L. Ayers
Ayers Law Firm, P.L.L.C.
1312 North Monroe Street, Suite 133
Spokane, Washington 99201
Telephone: (509) 252-6005

United States District Court
Eastern District of Washington
(Honorable Salvador Mendoza, Jr.)

| | |
|---|---|
| United States of America, | No. 2:21-CR-00164-SMJ |
| Plaintiff, | Motion and Memorandum in Support for Review of Order Granting United States' Motion for Detention |
| v. | |
| Vincent Nicholas Petrushkin, | **Notice of Hearing on Motion** |
| Defendant. | December 6, 2021 at 9:00 a.m., Richland |

Vincent Nicholas Petrushkin., through counsel, Walter L. Ayers of Ayers Law Firm, P.L.L.C., moves the Court to review the magistrate's order granting the United States motion for detention from November 19, 2020. (ECF 6).

**I.    Authority.**

18 U.S.C. §3145 states:

If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

A lower court's factual findings at bail hearings are given deference and reviewed under a clearly erroneous standard. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). The conclusions made based on the lower court's findings

Motion and Memorandum in Support for Review of the                    1
Order Granting United States' Motion for Detention.

"present a mixed question of fact and law and require the exercise of sound judgment as to the values underlying the legal principles." *Id.* Therefore, a lower court's order detaining a defendant is subject to "an independent examination of the record" by this Court "to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at [its]conclusion *de novo*." *Id.*

Basic principles underlying the Bail Reform Act direct that "a person arrested for a non-capital offense shall be admitted to bail." *Townsend*, 879 F.2d at 993 (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th cir. 1985) (citing *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). "Only in rare cases should release be denied." *Townsend*, 897 F.2d at 994 (citing *Motamedi*, 767 F.2d at 1405 (citing *Sellers v. United States*, 89 S.Ct. 36, 38 (1968) (Black, J., in Chambers)) (emphasis added). "[D]oubts regarding the propriety of release are to be resolved in favor of defendants." *Townsend*, 897 F.2d at 994 (citing *Herzog v. United States*, 75 S.Ct. 349, 351 (1955) (Douglas, J., Circuit Justice)).

Here, the government did not invoke a rebuttable presumption, claiming only that no condition or combination of conditions would assure the defendant's appearance as required or assure safety of other persons or the community if Mr. Petrushkin is released pending his trial. ECF 6.

**II. The Detention Hearing.**

Initially a complaint was filed November 9, 2021, charging Mr. Petrushkin with being an Ex-felon in possession of a firearm. His detention hearing was continued until November 16, 2021. On November 16, 2021, he was indicted. After advising

Mr. Petrushkin of his rights on that date, the Magistrate Judge held the detention hearing. In ordering the detention of Mr. Petrushkin, the Court made several observations and findings. First, the court noted a factual "correction" to the sworn affidavit for the initial complaint by the government regarding the possession of the firearm that is contradicted by and is inconsistent with the sealed, non-scannable exhibit, ECF 13 (Defendant's video recorded statement to law enforcement noted at ECF 36, p 2 ll 4-6, Order). It should be noted that the pertinent portion of that exhibit is directly contradictory to the sworn affidavit in support of the complaint. (ECF 2, Paragraph 9). The Magistrate Judge was erroneous in concluding that this was a mere correction.  In fact, while the affidavit was inconsistent with the video recorded statement, it appears that it maybe be either intentionally misleading and/or has the potential to adversely infect and affect the administration of justice in this and future cases, since the agent who swore to the affidavit was present at the video recording and can be observed taking notes along with another officer. The defendant will be unable to ascertain the full magnitude of this "correction" until discovery, which is due on December 1, 2021, is provided. (The discovery specifically should include the agent's and officers' unredacted rough notes and transcribed reports (including "302's") as well as Grand Jury transcripts are to be produced in accordance with this Court's Pretrial Order, paragraph D, (as supported by paragraphs C and E)) ECF 37. The alleged "correction" infects the subsequent detention hearing and necessarily subjects the proceeding to *de novo* review by this Court.

### III. Risk of Non-Appearance.

The government must demonstrate a risk of flight by a preponderance of the evidence. *Townsend*, 897 F.2d at 994 (citing *Motamedi*, 767 F.2d at 1406-1497). The term "community" is not limited to the current "community" in which a defendant resides. *Townsend*, 897 F.2d at 995. "Community" in the Bail Reform Act "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *Id.* (citations omitted).

Mr. Petrushkin was on community custody for three weeks. The Washington Department of Corrections report that the government provided, (Chronos Search for Vincent Petrushkin) shows that Mr. Petrushkin is amenable to pretrial supervision and is not a flight risk with appropriate conditions of release.

The Chronos, when read in the correct order reflect that on October 11, 2021, a Mr. Allen reported where Mr Petrushkin would be living. On October 14, 2021, Mr Petrushkin reported as directed to the SGU where an intake, orientation and drug test was completed. The drug test was negative for all substances. However, on October 18, 2021, Mr. Petrushkin self-reported (multiple phone calls) that he got drunk, used marijuana and because of that was kicked out of the house where he was staying. The author of the report stated she appreciated his honesty. One day later, on October 19, 2021, Mr. Allen called to confirm that Mr. Petrushkin self-reported. He stated that, "… he would be more than willing to allow Petrushkin to come back if he got into treatment." But he did not allow people living in the house to use drugs or drink. The

author stated that she would work with Mr. Petrushkin to figure out a plan. (While it is not a part of the report it is believed that while in this residence Mr. Petrushkin was assigned to be a roommate with his co-defendant who unbeknownst to Mr. Petrusskin at the time was an ex-felon.).

On October 19, 2021, Petrushkin reported as directed where the consumption of alcohol was dealt with. He was directed to obtain a "SUDS" evaluation and given a card to go to AXIUM for evaluation. Axium is a substance abuse recovery service. On October 28, 2021 he walked to the SGU with another individual who was a gang member. He was cautioned not to do so and required to write a two-page report. (he freely and honestly admitted that he knew the individual was a gang member. On that same date, he informed the author of the Chronos that he had been admitted to the ROAR house (Reaching Out Advocating Recovery) a faith-based re-entry house for ex-felons. This was confirmed by "Reggie".

By November, 2 2021, Mr. Petrushkin again reported as directed and stated that he was going to programming 3 times a week, living at the ROAR house and was waiting for his ID to be able to look for work. He was reminded to do his "thinking report" (believed to be the 2-page report concerning contact with ex-felons that may be located in his property at Spokane County Jail).

On November 4, a check revealed no pending charges or convictions. On November 6, Mr. Hernandez, was informed that Mr. Petrushkin was involved in the case for which he was later indicted. The report stated that he "may" have fired

rounds. (No discovery has been provided nor has he been charged with doing so). A Secretary's warrant thereafter issued (for what is believed to be associating with an ex-felon, as stated several times to Mr. Petrushkin in ECF 13).

On November 8, 2021, at 7:09 a.m. an entry states, "Failure to report" yet the Chrono does not reflect anywhere that he was notified to report on that date. More importantly, on the same date at 8:15 a.m. the Chrono states, "Received voicemail from PETRUSHKIN on my desk phone on the morning of 11/8/21 providing me with a new cell phone number of 208-924-7253." (It is highly improbable that an individual would report in, on his own, two days after the shooting of an officer/agent if he was in fact a shooter.). One day later, he reported to the violator facility at 1:03 p.m. where he was swarmed by several CCO's and arrested on the warrant and transported to Spokane Police Department Major Crimes Unit. He forthrightly admitted to the CCO his contact with a gang member and admitted to momentary possession of a firearm as stated in ECF 13. (If he had not confessed to the possession, it is unlikely he would have been indicted). On November 15, "Reggie" from the ROAR house was contacted and he stated that Mr. Petrushkin was not allowed at the ROAR house because he violated curfew on November 4, and had used marijuana (although marijuana is legal in Washington).

It is apparent that between October 11, 2021, and November 9, 2021 that Mr. Petrushkin reported as he was required to do so, sought housing, and was seeking work. He was also apparently supervise-able since for his associations his only

punishment was to write a "thinking report"

What is more telling and more predictive of the ability to supervise Mr. Petrushkin, is the report done before his incarceration in prison, since it is verified. It is referred to in ECF 36 as a 2020 state court evaluation. It states that, "he has checked in as required" and "there are no detainers at this time." Moreover, it states that he is, "homeless transient" is a cook and had last worked 3 weeks before that arrest. The 2020 report further states that there is a 65-73% likelihood of appearing in court, a 45-48% chance of remaining crime free pre-trial and most importantly, a 91.6-92.8% of returning to court without any new violent criminal activity. He had one failure to appear in the previous two years. His presumptive release category indicated that there were conditions that should be ordered if a court were to release him pre-trial. The assessment of nonappearance in the Federal Pretrial services report is conclusory at best and erroneous in fact, as set forth below. It should be reevaluated and rejected by this Court as a basis for its recommendations.

**IV. Risk of Safety of Other Persons and the Community.**

A finding that a defendant is a danger to any other person, or the community must be supported by "clear and convincing evidence." *Hir.* 517 F.3d at 1086 (quoting 18 U.S.C §3142(f)(2)(B)). In order to detain a person based on danger of safety to other persons or the community, there must be "proof of … a danger of recidivism in one or more of the crimes actually specified by the bail statute." *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); see also, *United States v. Ploof*, 851 F.2d 7, 10 (1st Cir.

1988) (same).[1] Furthermore, to detain a person based on violence, the government must prove that the offense charged involved a crime of violence. *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) ("it is not necessary that the charged offense be a crime of violence; only that the case involved a crime of violence….").

By his own admission, he was present when a crime of violence was committed. The charge of felon in possession is not a crime of violence nor is there evidence that he facilitated it beyond mere presence at the scene and mere, momentary possession of a firearm, born out of foolish curiosity. The pretrial services criminal history indicates that he spent 17 months in state custody for a burglary. A burglary that occurred in the middle of winter by a cold and homeless individual and involved a garage he had previously lived in consensually and a blanket that belonged to an ex-girlfriend who had lived there with him. What is missing from the federal pretrial services report is the concurrent conviction and sentence for Assault 2. Mr. Petrushkin was on the Monroe Street Bridge and saw another homeless individual wearing a backpack he thought belonged to him. He grabbed the backpack and the individual. The individual thought he was going to throw him off the bridge. When Mr. Petrushkin realized it was not his backpack, he released the individual. He was charged with attempted murder. According to his Spokane County Public Defender,

---

[1] The specified crimes are in §3142(f), including: (A) crimes of violence; (B) offenses involving potential life in prison; (C) drug offenses involving maximum penalties of 10 or more years in prison; (D) any felony if a person has two prior convictions of a crime of violence or controlled substance offenses as set out in (A) and (C); and (5) any felony that involves a minor, or possession or use of a firearm or destructive device. 18 U.S.C. § 3142(f)(1)(A)-(E).

Motion and Memorandum in Support for Review of the Order Granting United States' Motion for Detention.    8

rather than face the risk of a potential 220-month sentence he pled to the 2nd degree burglary and 2nd degree assault charges that involved a 17-month sentence. The Pretrial Services Report is inaccurate and therefore unreliable and should not be relied on by this Court.

## V. The Plan

The government insinuated that it was the duty of the defense to provide a "plan" for Mr. Petrushkin if the court were to release him pending pretrial. This confuses and conflates the duties of the defense. As this Court is aware, the "plan" as set forth in conditions by the Court is the duty of Pretrial services, to ensure that those conditions are complied with. They do not appear to have articulated or evaluated any conditions for the Court's consideration as the State report of 2020 did.

## VI. Conclusion.

While this Court will consider the frequency of the alleged violations, it should also consider the *de minimis* substance of those alleged violations and the nature of Mr. Petrushkin's unfortunate circumstances and require pretrial services to fashion conditions of release that will assure his ability to appear and defend the charges.

It is therefore requested that the Court fashion conditions of release upon review of the magistrate's order. It is suggested that the Court order Mr. Petrushkin's release and with electronic of GPS monitoring along with any other condition the Court deems appropriate (including inpatient treatment if available).

///

DATED this 24th day of November 2021.

Respectfully Submitted,

*s/Walter L. Ayers*
Walter L. Ayers, WSBA#19707
Attorney for Mr. Petrushkin.
Ayers Law Firm, P.L.L.C.
1312 N. Monroe St., Ste. 133
Spokane, WA 99201
Telephone: (509)252-6005
Email: walter@ayerslawfirm.net

## Service Certificate

I hereby certify that on November 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Caitlin Baunsgard, Assistant United States Attorney.

*s/Walter L. Ayers*
Walter L. Ayers, WSBA#19707
Attorney for Mr. Petrushkin.
Ayers Law Firm, P.L.L.C.
1312 N. Monroe St., Ste. 133
Spokane, WA 99201
Telephone: (509)252-6005
Email: walter@ayerslawfirm.net